UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDON LUCAS,

    Plaintiff,

v.

REGENTS OF THE UNIVERSITY
OF MICHIGAN

    Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in this Complaint.

**COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff Brandon Lucas ("Plaintiff"), by and through his attorneys, HURWITZ LAW PLLC, and states the following:

**INTRODUCTION**

1. Dr. Brandon Lucas earned his Master's Degree in Engineering and Doctorate in Applied Physics from the University of Michigan College of Engineering on his way to becoming the Director of Graduate Initiatives, Strategic

1

Planning, and Experiential Learning at the College of Engineering. After Associate Dean for Graduate and Professional Education, Lola Eniola-Adefeso, surprisingly placed Dr. Lucas on a Performance Improvement Plan ("PIP") citing nebulous performance issues, Dr. Lucas hired an attorney to report concerns of racial discrimination. Not only was Dr. Lucas then terminated by the University of Michigan, but he was placed on a Do Not Hire list at the College of Engineering due to reporting concerns of racial discrimination in violation of 42 U.S.C. § 1981. He found this out on May 17, 2023, when his offer of employment for a part-time Research Associate position with the College of Engineering was blanketly rejected. There is absolutely no justification for an alumnus with the extraordinarily impressive credentials of Dr. Lucas to be blackballed from working for the University of Michigan.

## JURISDICTION AND PARTIES

2. Plaintiff is an individual residing in Ypsilanti, County of Washtenaw, State of Michigan.

3. Defendant Regents of the University of Michigan ("Regents") is a body corporate pursuant to Article VIII § 5 of the Michigan Constitution headquartered in Ann Arbor, Washtenaw County, Michigan

4. Plaintiff's claims arise out of Defendant's violation of 42 U.S.C. § 1981 and also Michigan's Whistleblower Protection Act ("WPA"), MCL § 15.362 *et seq*.

5. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C.A. § 1331 (federal question jurisdiction) and 28 U.S.C.A. § 1343(a)(4) (jurisdiction over civil rights claims).

6. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391 because it is the district in which Defendant's principal place of business is located and the district in which the events giving rise to Plaintiff's claims transpired.

7. Plaintiff timely filed a Notice of Claims with the Michigan Court of Claims pursuant to MCL 600.6431.

## FACTUAL ALLEGATIONS

8. Plaintiff incorporates by reference herein the allegations contained in the foregoing paragraphs.

9. Plaintiff is black and protected from racial discrimination.

10. Plaintiff earned his Master of Engineering in electrical engineering from the Michigan Engineering college of the University of Michigan.

11. Plaintiff earned his Ph. D in applied physics from the University of Michigan.

12. Defendant employed Plaintiff as a Director of Graduate Initiatives within Michigan Engineering.

13. In 2001, Plaintiff was awarded the David and Lucile Packard

3

Foundation Graduate Research Fellowship.

14. Plaintiff was hired by Defendant for the position of Program Manager within by the College of Engineering in August 2007.

15. In 2007, Plaintiff was awarded the UNCF-Merck Graduate Science Initiative Research Fellowship.

16. In or about February 2009, Defendant promoted Plaintiff to the position of Workforce, Education and Business Development Officer.

17. In September 2012, Plaintiff joined the Michigan STEM Partnership Executive Committee.

18. In September 2014, Plaintiff joined the Henry Ford College Biotechnology Program Advisory Board, and the University of Michigan Center for Educational Outreach Council.

19. In April 2016, Defendant promoted Plaintiff to the position of Diversity, Equity and Inclusion Planning and Implementation Lead.

20. In September 2016, Plaintiff joined the University of Michigan Pre-Health Advisors Forum.

21. In October 2016, Plaintiff was appointed to the the MLK Health Sciences Committee.

22. In 2017, Plaintiff was awarded the Michigan Medicine Making a Difference Award and was a nominee for the Candace J. Johnson Award for Staff

Excellence.

23. In March 2018, Plaintiff founded the Summer Research Collaborative at the University of Michigan.

24. In March 2019, Defendant promoted Plaintiff to the position of Program Director for the Michigan Health Sciences Summer Institute.

25. In 2019, Plaintiff was again awarded the Michigan Medicine Making a Difference Award and was awarded the AKA Community Award for Student Mentorship.

26. In 2020, Plaintiff was awarded the Token of Appreciation from Medical Students Award.

27. In November 2021, Defendant placed Plaintiff in the position of Project Manager for the Youth Summit at the Big House.

28. In June 2022, Defendant promoted Plaintiff to the role of Director of Graduate Initiatives at the College of Engineering.

29. In the course of his role as Director of Graduate Initiatives, Plaintiff received consistently positive feedback from direct reports, colleagues, faculty members, and students.

30. Despite his consistent positive outcomes for several key initiatives, on January 31, 2023, Plaintiff was unexpectedly placed on a Performance Improvement Plan ("PIP") after previously submitting a request to HR to have a third-party

5

notetaker added to all future meetings with the Associate Dean due to repeated instances of workplace bullying and gaslighting behavior that had sponsored a hostile work environment in violation of Standard Practice Guideline 201.96.

31. This occurred after a previous meeting with the Associate Dean where the Plaintiff expressed concerns about salary inequities within the College that appeared to correlate with race and/or gender. Specifically, Plaintiff expressed concern that the previous individual in the role was also from a protected class and was suddenly removed from the role despite recently receiving institutional accolades for excellence.

32. Plaintiff also requested an updated job description due to the Associate Dean having made several unilateral organizational changes that materially impacted the role held by the Plaintiff such as the removal of administrative support and direct report FTEs. Changes were in direct contradiction to the Plaintiff's job classification

33. Plaintiff made significant efforts to meet Defendant's expectations as outlined in the incoherent PIP by asking clarifying questions which the Associate Dean consistently declined to answer by noting that Plaintiff should already know that answer during standing 30-minute weekly meetings.

34. Plaintiff met with Defendant's Human Resources Director, Christina Truskowski, and Defendant's Associate Dean for Graduate and Professional

6

Education, Lola Eniola-Adefeso, on March 17, 2023, concerning Plaintiff's progress in relation to the PIP.

35. In that meeting, Ms. Eniola-Adefeso acknowledged that Plaintiff had made satisfactory progress in relation to the majority of elements of the PIP, and shared several concerns that conflicted with previous directives and shared meeting notes that the Associate Dean directed her new administrative assistant to delete from a shared document. At the conclusion of the meeting, Ms. Truskowski noted that she would communicate the next steps to resolve concerns after the Associate Dean provided a comprehensive list which never occurred.

36. Plaintiff was then blindsided by the addition of Ms. Truskowski to a standing meeting with the Associate Dean where he was informed that the PIP was closed and that he was no longer deemed a fit for the current role due to concerns raised by the Associate Dean about an updated strategic plan draft. These expressed concerns included the improper use of publicly available Office of the Registrar data to characterize the lagging enrollment of underrepresented graduate students. The Plaintiff was told by the Associate Dean that incorrect lower enrollment numbers were cited and higher enrollment numbers for underrepresented students should have been used by designating a subset of international students as underrepresented. The Plaintiff noted that the data of concern had been included in the initial draft document and derived budget request materials that had been shared with the

Associated Dean approximately 1.5 months prior and no concerns were previously expressed. When the Plaintiff noted that the draft strategic plan had been informed and vetted by several subject matter experts throughout the institution, the Associate Dean responded that these experts had set the Plaintiff up for failure.

37. On April 7, 2023, Defendant was placed on administrative leave pending the outcome of a Disciplinary Review Conference ("DRC") with Plaintiff.

38. On April 14, 2023, Plaintiff's legal counsel sent an email to Senior Associate General Counsel for Defendant, noting Plaintiff's race and proposing a severance offer in relation to Plaintiff's pending Disciplinary Review Conference that, importantly, included eligibility for rehire in other units.

39. Communications between Plaintiff's former counsel and the University's Office of the General Counsel raised Plaintiff's concerns that he had faced discrimination in the course of his employment with Defendant.

40. After these concerns were raised, Defendant proposed a counteroffer to Plaintiff's severance offer, including a provision that Plaintiff would be ineligible for rehire at the College of Engineering.

41. Plaintiff disagreed with the "Do Not Hire" provision and rejected the severance offer.

42. On May 11, 2023, Plaintiff sent an email to Dean Alec Gallimore, Defendant's Dean of Engineering, stating that Plaintiff had faced racial

discrimination in the course of his employment with Defendant and requested that he not be subjected to the "Do Not Hire" provision.

43. On May 16, 2023, Plaintiff secured an offer of temporary employment within Michigan Engineering from Professor James Holly, Jr.

44. At 6:25 a.m. on May 17, 2023, Plaintiff sent an email to Dean Gallimore in which he stated that he decided to decline the severance offer and had secured an employment opportunity with Professor Holly in the Department of Mechanical Engineering and offered his immediate resignation from his current role.

45. At 9:31 a.m. on May 17, 2023, Professor Holly was notified by Laura Vespaziani, Defendant's Human Resources Representative for the Department of Mechanical Engineering, that Plaintiff had been flagged as a "Do Not Hire." via an unexpected call from Defendant's College of Engineering Human Resources Lead Ms. Truskowski.

46. At 9:56 a.m. on May 17, 2023, Ms. Truskowski replied to Plaintiff's email to Dean Gallimore, informing Plaintiff that he was not allowed to resign from his current position to accept an offer for another role and is deemed ineligible for rehire at the College of Engineering prior to the completion of the pending Disciplinary Review Conference

47. Plaintiff had been flagged "Do Not Hire" despite not agreeing to the severance agreement containing the "no re-hire" provision which resulted in the

Plaintiff remaining an active staff member at the College of Engineering.

48. Defendant placing Plaintiff as "Do Not Hire" was done only after Plaintiff had raised concerns regarding racial discrimination he suffered in the course of his employment with Defendant.

49. The "Do Not Hire" designation prevented Plaintiff from accepting an offer of employment within the College of Engineering.

## COUNT I
## RACE DISCRIMINATION AND RETALIATION
## IN VIOLATION OF 42 U.S.C. § 1981

50. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

51. Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors. 42 U.S.C. § 1981; *Christian v. Wal–Mart Stores, Inc.*, 252 F.3d 862, 867–68 (6th Cir.2001).

52. Section 1981 provides a cause of action that encompasses both claims of discrimination *and retaliation*. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008).

53. The legal standards for a retaliation claim under § 1981 are the same as those applicable to a Title VII retaliation claim. *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 464 (6th Cir.2001).

54. To establish a *prima facie* case of retaliation, an employee must show that: (1) he engaged in a protected activity, (2) the employer knew of his protected activity, (3) it took an employment action adverse to him, and (4) there was a causal connection between the protected activity and the adverse employment action. *Mulhall v. Ashcroft*, 287 F.3d 543, 551 (6th Cir.2002).

55. Plaintiff is a member of a protected class and racial minority (African American).

56. Plaintiff engaged in a protected activity first by raising his concerns of being discriminated against on the basis of his race through his former counsel in the email to Defendant's counsel dated April 14, 2023.

57. Plaintiff engaged in a protected activity second by raising his concerns of being discriminated against on the basis of his race in his own email to Dean Gallimore, dated May 11, 2023.

58. Defendant knew of Plaintiff's protected activity because the recipients of each email constituting Plaintiff's protected activities were Defendant's counsel and a senior officer of Defendant, respectively.

59. Defendant took an employment action adverse to Plaintiff by flagging him as "Do Not Hire."

60. Plaintiff's educational and work credentials are exemplary and there is no justification for him to be on a "Do Not Hire" list.

11

61. There is a causal connection between Plaintiff's protected activities and the adverse employment action because Plaintiff was not flagged as "Do Not Hire" until after he undertook the protected activities.

62. But-for Plaintiff's protected activities, Defendant would not have flagged him as "Do Not Hire."

63. Defendant's actions and treatment of Plaintiff constitutes retaliation on the basis of race in violation of 42 U.S.C. § 1981.

## COUNT II
## VIOLATION OF MICHIGAN'S
## WHISTLEBLOWER'S PROTECTION ACT: MCL § 15.362

64. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

65. At all relevant times, Defendant was an employer, and Plaintiff was an employee covered by and within the meaning of the WPA, MCL § 15.361.

66. Plaintiff engaged in protected activity under MCL § 15.362 because his legal counsel reported concerns of race discrimination to Defendant, which Plaintiff reasonably believed violated the law.

67. Defendant retaliated against Plaintiff because of his protected activity in violation of the WPA by, inter alia, placing him on a "Do Not Hire" list.

68. As a direct and proximate result of Defendant's violation of the WPA, Plaintiff has suffered emotional and physical distress, mental and physical anguish,

loss of reputation, humiliation, embarrassment, and the physical effects associated therewith, and will so suffer in the future.

69. As a further direct and proximate result of Defendant's violation of the WPA, Plaintiff has denied employment with Defendant and the ability to work for Defendant in the future, and he will suffer additional damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

A. Judgment against Defendant in the amount of Plaintiff's unpaid back pay, front pay, injunctive relief, declaratory judgment, liquidated damages, punitive damages, and attorney fees under Section 1981.

B. A declaratory judgment under Section 1981 and the WPA stating that it is unlawful for Plaintiff to be placed on a "Do Not Hire" list with Defendant.

C. All other damages available under the WPA.

D. Award Plaintiff appropriate equitable relief, compensatory damages, and exemplary damages;

E. Appropriate civil penalties;

F. All costs, attorneys' fees, and interest incurred prosecuting this claim; and

G. All further relief as the Court deems just and equitable.

                                              Respectfully submitted
                                              Hurwitz Law, PLLC

                                              */s/ Noah S. Hurwitz*
                                              Noah S. Hurwitz (P74063)
Dated: August 11, 2023                   Attorney for Plaintiff

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

BRANDON LUCAS,

    Plaintiff,

v.

REGENTS OF THE UNIVERSITY
OF MICHIGAN

    Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com

---

## **JURY DEMAND**

NOW COMES Plaintiff Brandon Lucas, by and through his attorneys, HURWITZ LAW, PLLC, and hereby demands a trial by jury of the issues in the above-captioned cause of action.

                                  Respectfully submitted
                                  Hurwitz Law, PLLC

                                  */s/ Noah S. Hurwitz*
                                  Noah S. Hurwitz (P74063)
Dated: August 11, 2023        Attorney for Plaintiff